United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GRANADOS FLORES, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ALAMEDA COUNTY INDUSTRIES INC,<br><br>　　　　Defendant. | Case No. 14-cv-03011-JD<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS & COLLECTIVE ACTION SETTLEMENT**<br><br>Re: Dkt. No. 39 |

This is a wage-and-hour class and collective action brought by five named plaintiffs on behalf of themselves and 300 fellow current and former recycling workers employed by Alameda County Industries. The parties reached a proposed settlement and now seek preliminarily approval. After holding a hearing and requesting certain changes to the settlement -- which the parties have made -- the Court grants preliminary approval and certifies the class for purposes of settlement.

## BACKGROUND

The plaintiffs in this wage-and-hour action, originally filed July 1, 2014, are current and former recycling workers employed by defendant Alameda County Industries, Inc. ("ACI"). Dkt. No. 15 ¶ 4. ACI is a California corporation headquartered in San Leandro, California, that "has contracted with the City of San Leandro to provide refuse collection and processing services." *Id.* ¶ 16. The named plaintiffs in this action -- Maria Granados Flores, Ignacia Garcia, Griselda Mora, Pablo Rodriguez and Divina Saguilán -- allege that ACI failed to pay them proper wages for overtime, vacation and other paid time off. *Id.* at 4-5. The recycling workers' compensation was "at or near California's minimum wage rate" and they received "overtime at one and one-half times these same rates." Dkt. No. 39 at 9. Prior to 2012, if an employee worked more than 720

hours in a calendar year, they were entitled to 10 days of paid time off ("PTO"), and 5 days of PTO between 2012 and 2014. *Id.* These compensation levels are below the minimum compensation rates mandated by San Leandro's Local Wage Ordinance ("LWO"), but the parties dispute whether the LWO covers ACI or the workers. *Id.*

The parties participated in mediation after the plaintiffs filed their first amended complaint, and were able to reach a settlement. At the hearing on the motion for preliminary approval of this settlement, the Court flagged several areas of concern involving reversion of unclaimed funds to the defendant, inflated incentive payments to class representatives, and insufficient time for class members to cash their settlement checks. Dkt. No. 38. The Court gave the parties additional time to submit an amended motion, which they chose to do. *Id.* The parties signed a revised settlement agreement, the operative agreement here, in early January 2015 and refiled it with the Court. Dkt. No. 39.

## DISCUSSION

The parties have made multiple changes to the previous settlement agreement to address the problems discussed at the last hearing. The revised motion fixes the Court's concerns.

### I. TERMS OF THE PROPOSED SETTLEMENT

The putative class consists of approximately 300 current and former ACI recycling workers. Dkt. No. 39 at 3. It includes "all persons who are or have worked as sorters, yard spotters, bailers, cleaners (including evening screen cleaners), forklift operators, and operators of other equipment at Alameda County Industries' Materials Recovery processing facility at 610 Aladdin Avenue in San Leandro, California during the Class Period," which covers January 27, 2010 to October 31, 2014.[1] Dkt. No. 39-1, Ex. 1 at 4-5.

Under the revised settlement agreement, ACI will pay $1,100,000 into a non-reversionary settlement fund, which will be the source for settlement administration costs (up to a maximum of $10,000), attorney's fees and costs (up to a maximum of $180,000 as decided by the Court in subsequent proceedings), class representative service awards for each of the 5 representatives if

---

[1] The FLSA class is defined identically, but only covers January 27, 2011 to October 31, 2014. Dkt. No. 39 at 18.

the Court approves the request ($2,500 each, totaling $12,500), and monetary relief for the class. *See* Dkt. No. 39-1, Ex. 1.  Each class member will receive "a proportionate share of the [net settlement fund] based on the Class Member's proportionate number of hours worked during the Class Period." *Id.* at 6-9.  The class members do not have to submit claim forms to get a settlement check -- current and former employees will get a check sent directly to them based on best known contact information. *Id.* at 9; Dkt. No. 39 at 2.  If the amount of uncashed checks totals more than $10,000 after 90 days, the amount of time class members have to cash their check, those funds will be redistributed to the class members who cashed their initial checks on a pro-rata basis.  Dkt. No. 39-1, Ex. 1 at 3.  If the amount remaining from the uncashed checks is less than $10,000, it will be paid to the Legal Aid Society Employment Law Center. *Id.*

The scope of the released non-FLSA claims is as follows:

> [T]he Plaintiffs and each Class Member who has not validly opted out…do hereby and forever release, acquit and discharge, and covenant not to sue any of the Released Parties from all causes of action, claims, liens, demands, damages, penalties, fines, wages, liquidated damages, restitutionary amounts, attorneys' fees and costs, punitive damages, controversies and liabilities which were alleged in the Lawsuit, or which could have been alleged in the Lawsuit based on the same facts and circumstances as alleged in the complaint.

*Id.* at 17.  For the FLSA claims, each putative FLSA collective action member who cashes a settlement check will be deemed to have "opted in" to this action. *Id.*  As of January 7, 2015, "a total of 61 Recycling Workers have filed Consent to Join forms to become part of the FLSA collective action." Dkt. No. 39 at 10.  The scope of the released FLSA claims is identical to the non-FLSA release, except that it covers all actions or claims that were

> alleged in the Lawsuit, or which could have been alleged in the lawsuit, under the FLSA, 29 U.S.C. § 201 *et seq.*, … which the Class Members or any of them, or any of the Plaintiffs has, or had, during the Release Period against any Released Party based on and related to the facts alleged in the Complaint.

*Id.* at 17-18. Finally, each plaintiff for whom the Court approves an incentive payment of at least $1,000 will be subject to an additional release:

> [A]ny and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses…of

3

> any nature whatsoever, from the beginning of time through the date of their respective signatures on this Agreement, known or unknown, suspected or unsuspected, including but not limited to all claims arising out of, based upon, or relating to their employment with Select and/or ACI, or the remuneration for, or termination of, such employment.

*Id.* at 18.

Notice will be sent by mail to all class members, and will be written in both English and Spanish. Dkt. No. 39-1, Ex. 1 at 11-12. The notice will summarize the terms of the settlement and will be individualized, identifying the respective "Class Member by his or her name and current mailing address, the total hours worked by the Class Member during the Class Period, the Hourly Settlement Rate provided under the Settlement, and the estimated Individual Settlement Payment." *Id.* at 11-12.

## II. FAIRNESS OF THE SETTLEMENT

When the parties reach a proposed settlement prior to class certification, the court reviews both the propriety of the certification and the fairness of the settlement. *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169, at *2 (N.D. Cal. Mar. 18, 2015). Rule 23(e) directs the Court to examine the proposed settlement and make a preliminary finding of fairness. A class action settlement may be approved only if the Court finds that it is "fair, reasonable, and adequate." Fed. R. Civ. Pro. 23(e)(1)(C). The parties bear the burden of showing that the proposed settlement is fair. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). There is a higher standard of fairness when settlement occurs before formal class certification, because "the dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." *Sarkisov*, 2015 WL 1249169, at * 2 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The primary consideration in evaluating a class settlement agreement is "the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice*, 688 F.2d at 624. To realize this goal, the Court will give preliminary approval of a class settlement and notice only when "[1] the proposed

4

settlement appears to be the product of a serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . " *Stokes v. Interline Brands, Inc.*, No. 12-CV-05527-JD, 2014 WL 5826335, at *3 (N.D. Cal. Nov. 10, 2014) (citations omitted).

The prior settlement agreement had several problems. For example, unclaimed funds reverted to the defendant, which effectively discounts the settlement in an unfavorable way to the class. As the Court said at the hearing, reversion of funds is an indicia of a collusive deal and unfairness to the class. *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th. Cir. 2011). Under the revised agreement, funds no longer revert to the defendant. The parties have now agreed to maximize the money delivered to the class by agreeing that unclaimed funds exceeding $10,000 will be distributed on a pro rata basis to the class members who cashed their initial checks. If the unclaimed amount is less that $10,000, the balance will be given to the Legal Aid Society Employment Law Center, not to the defendant. This is a good result and the Court appreciates the parties' work to get there.

The previous settlement agreement also gave class members only sixty days to cash their settlement checks. Dkt. No. 38. The Court advised the parties that class members should have at least ninety days to cash their checks, and the parties have made that happen.

In light of these and other provisions in the revised papers, the Court finds that the agreement is "fair, reasonable, and adequate," and that it adequately protects the interests of the putative class members. Fed. R. Civ. Pro. 23(e)(1)(C).

**III. CLASS CERTIFICATION**

The parties also request that the Court conditionally certify the proposed class for settlement purposes only. In certifying a class for settlement purposes, review of the proposed class is "of vital importance," as the court lacks the opportunity to make adjustments to the class, as it ordinarily would when a case is fully litigated. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

To be certified, the proposed class settlement must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3). Rule 23(a) provides that a class action is available only where: (1) the class is so numerous that joinder is impracticable; (2) common question of law or fact exist; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the class interests. Additionally, Rule 23(b)(3) requires the Court to find that common questions of law or fact predominate over the questions of individual class members and that a class action is the superior method for fair and efficient adjudication.

The Court finds that the requirements of Rule 23(a) are met. The numerosity requirement is met because the putative class consists of about 300 former and current recycling workers. The commonality requirement is met because the resolution of the claims depends on common questions of law and fact about the class members' employment with ACI. The named plaintiffs' claims meet the typicality requirement because they are all current or former recycling workers who, "like all Class Members…were underpaid according to…state and federal overtime laws. They also suffered the same forfeiture of paid vacation [and paid time off] as other Class Members." Dkt. No. 39 at 15. And the adequacy requirement is met because there is no indication of any conflicts of interest between the named plaintiffs and the absent class members, and because plaintiffs' counsel appear to be well-qualified to serve as class counsel. *See* Kaufmann Decl., Dkt. No. 39-1 at 4-8. For the same reason, the Court finds that plaintiffs' counsel are adequate under Rule 23(g)(1) and (4) and appoints them as class counsel.

The Court also finds that the requirements of Rule 23(b)(3) are met. Common questions of law and fact predominate over any questions affecting only individual class members because the primary issues in dispute revolve around ACI's alleged failure to properly compensate the class members under the LWO and whether the LWO applies to ACI and the workers. The superiority requirement is also met because "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis," as would likely be the case here. *See Wolin v. Jaguar Land Rover North Am.,* LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).

6

The preliminary approval motion seeks the conditional certification of an FLSA collective action consisting of those class action members that opt-in to the FLSA settlement. Dkt. No. 39 at 18. The district court may, in its discretion, conditionally certify an FLSA collective action if plaintiff meets his burden of showing that the putative collective action members are "similarly situated," and "[c]ourts have generally held that the 'similarly situated' standard under the FLSA is not as stringent a standard as the 'common questions predominate' standard under Federal Rule of Civil Procedure 23(b)(3)." *Sarkisov*, 2015 WL 1249169, at *5 (citation omitted). By meeting the more stringent requirements for conditional class certification, the Court finds that Plaintiffs have sufficiently shown that potential collective action members are "similarly situated" within the meaning of the FLSA for purposes of conditional certification.

## IV. CLASS NOTICE

The Court approves the parties' proposed notice pursuant to Federal Rule of Civil Procedure 23(c)(2) -- the form uses language that is concise and easy to understand, and otherwise complies with Rule 23(c)(2). The Court also approves the notice under the FLSA. The purpose of a FLSA notice is to alert putative class members of the action and the proposed settlement to allow them the opportunity to opt-in. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (noting that a FLSA notice should include "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."). The notice form does just that, clearly explaining how to opt out of the non-FLSA class and that, by cashing a settlement check, the class member opts in to the FLSA class. Dkt. No. 39-1, Ex. 3 at 4-5. The notice form is approved.

## CONCLUSION

The Court sets a hearing for final approval of the settlement on October 14, 2015 at 10:00 a.m. and otherwise adopts the notice schedule proposed in plaintiffs' motion for preliminary approval. Dkt. No. 39 at 17. Plaintiffs' motion for final approval and any memorandum in support by defendants should be filed 28 days before the final approval hearing. Plaintiffs' counsel's application for attorney's fees and costs and service awards to the class representatives should be filed by June 26, 2015. The Court will decide the attorney's fees and whether the

named plaintiffs will receive an incentive payment for service as the class representatives, a practice that this Court normally disfavors, at the final approval stage.

**IT IS SO ORDERED.**

Dated: June 16, 2015

_____
JAMES DONATO
United States District Judge