UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA GRANADOS FLORES, et al.,<br><br>             Plaintiffs,<br><br>      v.<br><br>ALAMEDA COUNTY INDUSTRIES INC,<br><br>             Defendant. | Case No. 14-cv-03011-JD<br><br>**ORDER RE CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 48, 49, 56 |

In this wage-and-hour class and collective action, the Court previously granted preliminary approval of a proposed class action settlement. Dkt. No. 47. Following a hearing on plaintiffs' motion for final settlement approval, the parties modified the settlement to increase the amount of the settlement fund available to the class members. Dkt. No. 56. This order resolves plaintiffs' unopposed motions for: (1) final settlement approval and certification of a settlement class; and (2) attorneys' fees, costs, and class representative service awards. Dkt. Nos. 48, 49; *see also* Dkt. Nos. 54, 56. The Court grants the motion for final settlement approval and grants in part the motion the motion for fees, costs and service awards.

## BACKGROUND

The key facts are set out in the Court's preliminary approval order. Dkt. No. 47. As a high-level summary, the plaintiffs in this wage-and-hour action, originally filed July 1, 2014, are about 408 current and former recycling worker employees of defendant Alameda County Industries, Inc. ("ACI"). Dkt. No. 49 at 1-2; Dkt. No. 15 ¶ 4. ACI is a California corporation headquartered in San Leandro, California, that "contracted with the City of San Leandro to provide refuse collection and processing services." Dkt. No. 15 ¶ 16. The named plaintiffs in this

1   action -- Maria Granados Flores, Ignacia Garcia, Griselda Mora, Pablo Rodriguez and Divina
2   Saguilán -- allege that ACI failed to pay them proper wages for overtime, vacation and other paid
3   time off, in violation of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"),
4   the San Leandro Living Wage Ordinance (Municipal Code §§ 1-6-600, *et seq.*) and various
5   California state laws.  Dkt. No. 15, ¶¶ 33-76, 82-92.

6         The parties initially entered into a settlement agreement after mediation on September 12,
7   2014.  Dkt. No. 36 at 4-5.  The Court denied preliminary approval because of multiple
8   deficiencies, such as provisions allowing reversion of funds to defendants, providing incentive
9   payments to class representatives absent extraordinary circumstances, and providing inadequate
10  time for class members to cash their settlement checks.  Dkt. No. 38.  The parties executed a
11  revised settlement agreement and filed an amended motion for preliminary approval.  Dkt. No. 39.
12  The Court granted preliminary approval on June 16, 2015, after the parties addressed the concerns
13  the Court had specifically mentioned, and because the revised agreement appeared "fair,
14  reasonable, and adequate" under Federal Rule of Civil Procedure 23(e).  Dkt. No. 47.

15        Plaintiffs filed a motion for final approval of the settlement agreement, and a separate
16  motion for attorneys' fees and costs, and the Court held a hearing on October 14, 2015.  Dkt. Nos.
17  49, 48.  The Court denied final approval because the motion revealed a significant reduction in the
18  amount of recovery to class members from what had been calculated in the motion for preliminary
19  approval.  Dkt. No. 53; Dkt. No. 49 at 4 n.2-3.  Specifically, the parties surprised the Court with a
20  proposed reduction of over $80,000 from the funding pool to cover tax payments.  *See* Dkt. No. 49
21  at 4.  That represented a cut of approximately 9% in the money available to the class.  The Court
22  expressed strong concern about this last-minute pruning of the class's recovery and denied final
23  approval subject to an opportunity by the parties to pay the taxes in a way that did not punish the
24  class.  Parties then executed an amendment to the settlement agreement that restored the amount of
25  recovery to the class members by splitting the tax payments between the defendant and plaintiffs'
26  counsel.  Dkt. No. 56.  Together, the January 7, 2015 Stipulation and Class Action Settlement
27  Agreement (Dkt. No. 39-1, Exh. 1) and the October 26, 2015 Amendment (Dkt. No. 56-1, Exh. 1)
28  constitute the operative agreement.

1          The settlement will bind, unless they opted out, "all persons who are or have worked as
2   sorters, yard spotters, bailers, cleaners (including evening screen cleaners), forklift operators, and
3   operators of other equipment at Alameda County Industries' Materials Recovery processing
4   facility at 610 Aladdin Avenue in San Leandro, California during the Class Period." Dkt. No. 39-
5   1, Exh. 1 at 4.  The class period covers January 27, 2010 to October 31, 2014.  *Id*.; Dkt. No. 49 at
6   5.  A FLSA class is also defined as "Named Plaintiffs and all Class Members who (i) cash a
7   Settlement Check as defined herein and/or (ii) have formally opted in to this Action by filing a
8   Consent to Join," and covers the period January 27, 2010 to December 1, 2014.  Dkt. No. 39-1,
9   Exh. 1 at 4-5.
10         Under the operative settlement agreement, the non-reversionary "Total Settlement Amount
11  ("TSA") which ACI shall pay to resolve the lawsuit" is $1,140,211.  Dkt. No. 56-1, Exh. 1 at 2;
12  Dkt. No. 39-1, Exh. 1 at 15-16.  The agreement documents class counsel's intention to seek up to
13  $139,789 out of this settlement amount (which amounts to 12% of the total) for attorney fees and
14  reimbursement for out-of-pocket costs, combined.  Dkt. No. 56-1, Exh. 1 at 2.  The agreement also
15  indicates class representatives' intention to request service payments of up to $12,500 in the
16  aggregate, to be divided equally among the five class representatives.  Dkt. No. 39-1, Exh. 1 at 7.
17  Up to an additional $10,000 was estimated for the settlement administrator.  *Id*. at 6; *see also* Dkt.
18  No. 56 at 1 (now estimating these fees as $9,000).  Employer-side payroll taxes that cover the
19  "employer's share of payroll taxes on the one half of the settlement payouts that are designated as
20  wages" are also to be funded out of the total settlement amount.  Dkt. No. 49 at 3-4 (estimating
21  these taxes in the motion for final approval as $80,421.25); Dkt. No. 39-1, Exh. 1 at 6; Dkt. No. 56
22  at 1 (describing plaintiffs' counsel's reduction to its fee request by $40,211 and defendant ACI's
23  increase to the TSA by $40,211, to effectively "independently fund" the previously calculated tax.
24  The resulting increased recovery of the class then raised the taxes to approximately $86,403.81).
25  The parties estimate that a net settlement fund of $892,518.19 will remain after these estimated
26  costs are deducted.  Dkt. No. 56 at 1.  This amount is proposed to be distributed to the class
27  members based on their "proportionate number of hours worked" during the class period.  Dkt.
28  No. 39-1, Exh. 1 at 9; Dkt. No. 49 at 3.

Significantly, the class members do not need to submit claim forms in order to receive a settlement check. Unless they exclude themselves from the settlement, all class members will receive a check sent to them based on their best known contact information. *See* Dkt. No. 39-1, Exh. 1 at 9-13, 15; *see also* Dkt. No. 49 at 5. If the amount of uncashed checks totals $10,000 or more, those funds will be redistributed to the class members who cashed their initial checks on a pro-rata basis. Dkt. No. 39-1, Exh. 1 at 16. If the amount is less than $10,000, it will go to the cy pres beneficiary, the Legal Aid Society-Employment Law Center in San Francisco. *Id.* The cy pres beneficiary would also receive any amounts that result from uncashed checks in a second round of distribution to class members. *Id*.

The class members, apart from those who submit exclusion letters or whose notices are returned by the postal service, release ACI and certain other entities from "all causes of action, claims, liens, demands, damages, penalties, fines, wages, liquidated damages, restitutionary amounts, attorneys' fees and costs, punitive damages, controversies and liabilities which were alleged in the Lawsuit, or which could have been alleged in the Lawsuit based on the same facts and circumstances as alleged in the complaint." *Id.* at 17. Class members who cash their settlement checks or otherwise opt in to an FLSA class also release ACI and certain other parties from any claims "alleged in the Lawsuit, or which could have been alleged in the lawsuit, under the FLSA, 29 U.S.C. § 201 *et seq*., … which the Class Members or any of them, or any of the Plaintiffs has, or had, during the Release Period against any Released Party based on and related to the facts alleged in the Complaint." *Id.* at 17-18. Class members in both classes retain all claims not arising out of or relating to the allegations in the complaint. Any of the class representatives who receive an incentive payment of at least $1,000 will further and fully release certain parties from any and all claims she may have against them, relating to her employment, up to the date she signed the settlement agreement. *Id.* at 18-19.

Plaintiffs report that notice has been provided in accordance with the proposed settlement agreement. The class administrator received and updated a computerized list of the class members' names and last known addresses. Dkt. No 49 at 5. Individualized packets were mailed in both English and Spanish to the updated mailing addresses. *Id*. at 5, 10. Each notice packet

4

contained information on the settlement, including an individualized "estimated settlement calculation," and advised class members of their opt-out and objection rights. *Id*. at 5; Dkt. No. 51 at ¶¶ 5-6, 11. Efforts were made to locate new addresses, and new addresses were received from plaintiffs and counsel, and a second round of notice packets were sent to those whose packets were returned in the first cycle. Dkt. No. 49 at 5. Through these efforts, only "22 Notice Packets have been returned as undeliverable with no forwarding address." *Id.* As of September 11, 2015, the class administrator had received "*no* requests for exclusion from the Settlement, *no* disputes, and *no* objections. *Id*. at 6 (emphasis in original); Dkt. No 51 at ¶¶ 13-15.

## DISCUSSION

### I. FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FINAL CERTIFICATION OF SETTLEMENT CLASS

In the order granting preliminary approval, the Court found that the proposed settlement satisfies the requirements of Federal Rule of Civil Procedure 23(a), namely, numerosity, commonality, typicality and adequacy of representation. Dkt. No. 47 at 6. The Court also found that the proposed class met the predominance and superiority requirements of Rule 23(b)(3). *Id*. The Court also reached the conclusion that the proposed agreement was "fair, reasonable, and adequate" under Rule 23(e). *Id*. at 4-5. The Court confirms that the terms of the agreement are "fair, reasonable, and adequate," particularly in light of the decision of plaintiffs' counsel and defendant ACI to increase the amount of the settlement fund available to the class members. *See* Dkt. No. 56 at 1; Dkt. No. 56-1, Exh. 1; Dkt. No. 49 at 7-8.

The Court finds that these conclusions hold at this final approval stage. The relief available to the class is reasonable in light of the risks they face. For the strengths and weaknesses of plaintiff's case, plaintiff's motion identifies the "legitimate dispute" between the parties on whether certain claims were available to the class members, and the "serious obstacle[s]" they faced in seeking recovery despite arbitration clauses they had signed. *See* Dkt. No. 49 at 7. By settling, the class avoids the risk that the Court will find merit in any of those bases, and each member will instead simply receive a check in the mail that on average, is expected to exceed two

thousand dollars. *Id*. at 8; Dkt. No. 56 at 1. More than twenty plaintiffs are expected to receive payouts over ten thousand dollars. Dkt. No. 49 at 8.

The Court also finds that the discovery done in the case was appropriate, and plaintiffs' counsel has detailed a sufficiently robust investigation into class and liability issues. *Id*. at 9. Last but not least, plaintiffs report that no class members have objected to the proposed settlement, which is a significant factor in favor of final approval. *Id*. at 6, 9-10; *see Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("the absence of a large number of objections to a proposed class action settlement raises a strong presumption the terms of a proposed class settlement action are favorable to the class members"); *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (listing "the reaction of the class members to the proposed settlement" among the "non-exclusive" settlement evaluation factors courts are to consider before granting approval). No objections were raised at the public hearing.

On the FLSA side of the case, the Court found at the preliminary approval stage that plaintiff had satisfied the standard for conditional certification of the FLSA collective action, which is more lenient than the requirements for certification under Federal Rule of Civil Procedure 23. Dkt. No. 47 at 7. That conclusion, too, still holds. And for the same reasons already discussed, the Court finds that the proposed FLSA settlement constitutes a "fair and reasonable" resolution "of a bona fide dispute," and approves it. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).

Consequently, the Court grants final approval of the proposed settlement, finally certifies the class as proposed, and confirms the appointment of Maria Granados Flores, Ignacia Garcia, Griselda Mora, Pablo Rodriguez, and Divina Saguilán as class representatives and Leonard Carder, LLP as class counsel.

## II. ATTORNEYS' FEES AND COSTS

Plaintiff's counsel seeks the Court's approval for an award of $139,789 in attorneys' fees and costs. Dkt. No. 56 at 1; Dkt. No. 48 at 7. This figure includes reimbursement to counsel for at least $21,582 in out-of-pocket litigation expenses. Dkt. No. 48-1 at ¶¶ 23, 27; Dkt. No. 48 at 7.

1   Reasonable attorney's fees and costs are allowed under Federal Rule of Civil Procedure 23(h) and
2   Section 216 of the FLSA, 29 U.S.C. § 216(b), both of which apply to this case.

3         Excluding the costs, the amount sought by plaintiffs' counsel represents only slightly over
4   10% of the $1,140,000 total class settlement. This amount is consistent with the "benchmark" in
5   our Circuit when fees are sought in this manner. *See In re Online DVD-Rental Antitrust Litig.*,
6   779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees
7   equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is
8   25%"). The reasonableness of the fees requested is confirmed by the fact that the fee award
9   sought by counsel ($139,789 - $21,582 = $118,207) is less than 33% of what the fees would be if
10  calculated under the alternate lodestar method (at least $359,950). *See* Dkt. No. 48-1 ¶ 25 (noting
11  that the final lodestar would exceed $359,950); *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,
12  1050 (9th Cir. 2002) (approving the district court's use of the lodestar method "as a cross-check of
13  the percentage method"). The Court finds that the unopposed fee request is also adequately
14  supported by the documentation plaintiff has submitted, Dkt. No. 48-1, and the Court approves it.

15        Plaintiff's counsel has documented a request for $21,582 in costs, which the Court finds
16  adequately-supported and reasonable. The Court awards these costs as requested.

### III. INCENTIVE AWARDS

18        The "incentive payment" request is granted only in part. Plaintiffs ask the Court to award
19  an extra $2,500 in incentive payments to each of the five named plaintiffs and class
20  representatives. Dkt. No. 48 at 3-7.

21        The Court, following the Ninth Circuit, has consistently expressed strong skepticism of
22  arrangements whereby named plaintiffs do better than ordinary members of the class, based on the
23  danger that it may lead to collusive settlements and conflict within the plaintiff's side of the case.
24  *See Myles v. AlliedBarton Sec. Servs., LLC*, No. 12-cv-05761, 2014 WL 6065602, at *6 (N.D. Cal.
25  Nov. 12, 2014) ("Absent a particularized showing of expenses incurred or injury suffered by [the
26  named plaintiff] (above and beyond those of the other proposed class members), an enhancement
27  award is inappropriate"); *Stokes v. Interline Brands, Inc.*, No. 12-cv-05527, 2014 WL 5826335, at
28  *6 (N.D. Cal. Nov. 10, 2014); *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834, 2015 WL

1    5769621, at *4 (N.D. Cal. Sept. 30, 2015). The Court has expressly advised the parties in this case

2    that this is a "practice that this Court normally disfavors." Dkt. No. 47 at 8.

3        But the Court's serious doubts about the propriety of incentive payments do not amount to

4    an inflexible rule. In rare circumstances, there can be factors that warrant the award of additional

5    money to the named representatives above and beyond what the rank-and-file class members get.

6    *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (describing relevant factors in

7    determining an incentive award as "the actions the plaintiff has taken to protect the interests of the

8    class, the degree to which the class has benefitted from those actions, ... the amount of time and

9    effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace

10   retaliation" (quotation omitted)).

11       This case qualifies for some additional relief for the named plaintiffs. As an initial factor,

12   the named plaintiffs won a meaningful increase in ACI worker wages to meet the San Leandro

13   Living Wage Ordinance, one of the key issues of the Complaint. *See* Dkt. No. 48 at 2; Dkt. No.

14   39 at 4. They have documented some harassment for their protest against the conditions that led

15   to this suit. Before the suit was filed, plaintiffs began working with their attorneys, and four of the

16   five participated in a work action to protest the pay conditions that led to this suit in February

17   2014. *See* Dkt. No. 48-2, Exh. 1 ¶¶ 5, 7; *id.*, Exh. 2 ¶¶ 5, 7; *id.*, Exh. 3 ¶¶ 5,7; *id.*, Exh. 4 ¶ 5; *id.*,

18   Exh. 5 ¶¶ 5, 7; Dkt. No. 48 at 4. The four plaintiffs report being specifically warned not to

19   participate in the protest, and that they were temporarily fired for their participation. *See* Dkt.

20   No. 48-2, Exh. 1 ¶ 7; *id.*, Exh. 2 ¶ 7; *id.*, Exh. 3 ¶ 7; *id.*, Exh. 5 ¶ 7; Dkt. No. 48 at 4. They also

21   put in more than usual work on developing the case claims even though the majority of them had

22   left ACI during the pendency of the litigation. *See* Dkt. No. 48-2, Exh. 1 ¶¶ 4-5 (plaintiff

23   Granados Flores an ACI worker at least 11/2012-1/5/2015, 45-55 hours on case); *id.*, Exh. 2 ¶¶ 4-5

24   (plaintiff Garcia an ACI worker until March 2014, 68-73 hours on case); *id.*, Exh. 3 ¶¶ 4-5

25   (plaintiff Mora an ACI worker until March 2014, about 68 hours on case); *id.*, Exh. 4 ¶¶ 4-5

26   (plaintiff Rodriguez an ACI worker until September 2013, about 58-68 hours on case); *id.*, Exh. 5

27   ¶¶ 4-5 (plaintiff Saguilán an ACI worker until February 28, 2014, about 30-36 hours on case); Dkt.

28   No. 1 (initial complaint, filed on July 1, 2014); c*f. Staton*, 327 F.3d at 977. Plaintiff Granados

United States District Court
Northern District of California

1  Flores, the only named plaintiff who remained an employee through the end of the class period,
2  reported an additional act of retaliation, when she was bypassed for a work shift in March 2014
3  due to her participation in the work action. Dkt. No. 48-2, Exh. 1 ¶ 8. The named plaintiffs
4  appear to have participated throughout the case, meeting with counsel and co-workers to
5  investigate and prosecute the case, interfacing with co-workers regarding the case and their FLSA
6  opt-in process, participating in mediation, and helping counsel to track down addresses for absent
7  class members. Dkt. No. 48 at 3-5; Dkt. No. 49 at 5.

8  In light of these facts, and the documented hardships encountered by plaintiffs in their
9  pursuit of this case, the Court approves service awards of $500 to each of the five named
10 plaintiffs. In addition, all of the named plaintiffs may be reimbursed for any out-of-pocket costs
11 and any work missed.

## CONCLUSION

13 The Court grants plaintiff's (1) motion for final approval of class settlement and for final
14 certification of settlement class, Dkt. Nos. 49, 56, and (2) motion for attorneys' fees and costs,
15 Dkt. Nos. 48, 56. The Court grants final approval of the proposed settlement, finally certifies the
16 class and FLSA class as proposed, and confirms the appointment of Maria Granados Flores,
17 Ignacia Garcia, Griselda Mora, Pablo Rodriguez and Divina Saguilán as class representatives and
18 Leonard Carder, LLP as class counsel. The Court further approves the payment of $118,207 in
19 attorneys' fees and $21,582 in costs to class counsel.

20 Plaintiff's motion for incentive pay to class representatives Maria Granados Flores, Ignacia
21 Garcia, Griselda Mora, Pablo Rodriguez and Divina Saguilán, Dkt. No.48, is granted in part, and
22 these named plaintiffs may be reimbursed for any out-of-pocket costs and any work missed.

23 The parties are ordered to comply with the remaining terms of the revised settlement
24 agreement, Dkt. No. 39-1, Exh.1 and Dkt. No 56-1, Exh. 1, and the Clerk is requested to close the

file and terminate any pending matters.

**IT IS SO ORDERED.**

Dated: November 16, 2015

_____
JAMES DONATO
United States District Judge